# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, § § § | |
| *Plaintiff,* § § | Civil Action No. 4:22-CV-00340 |
| v. § § | Judge Mazzant |
| HOLLY L. MOORE and § JEFFREY H. SIMPSON, § § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Holly L. Moore's Motion for Partial Summary Judgment that Holly Moore is the Primary Beneficiary of the Subject Transamerica Life Insurance Policy (Dkt. #26)[1] and Defendant Jeffrey H. Simpson's Motion for Summary Judgment (Dkt. #27). Having considered the motions and the relevant pleadings, the Court finds that Defendant Holly L. Moore's Motion for Partial Summary Judgment (Dkt. #26) should be **GRANTED**, and that Defendant Jeffrey H. Simpson's Motion for Summary Judgment (Dkt. #27) should be **DENIED**.

## BACKGROUND

At the heart of this interpleader action is a dispute involving competing claims to the proceeds of a life insurance policy. Defendants Holly L. Moore ("Moore") and Jeffrey H. Simpson ("Simpson") each claim entitlement to the proceeds of a life insurance policy issued by Transamerica Life Insurance Company ("Transamerica") to Ian J. Simpson (the "Decedent").

---

[1] Although Defendant Holly L. Moore styles her motion as a "motion for partial summary judgment," it appears to the Court that Defendant Moore's motion addresses all the issues remaining in this case (Dkt. #26). Moreover, the parties have confirmed to the Court that their cross-motions for summary judgment will be dispositive of the entire case (Dkt. #33).

Faced with these competing claims, Transamerica sought interpleader relief from the Court. Both Moore and Simpson now request that the Court decide their respective rights to the proceeds of the Transamerica policy held by the Decedent.

**I.      Factual Background**

In February 2018, the Decedent purchased Transamerica term life insurance policy No. 6600424765 (the "Policy"), which provided $100,000 in coverage (Dkt. #26, Exhibit 1-A). At the time that he purchased the Policy, the Decedent identified himself as single, and he was engaged to marry Moore later that fall (Dkt. #26, Exhibit 1-B). The Decedent designated Moore, his then-fiancée, as the primary beneficiary of the Policy and Simpson, his father, as the Policy's contingent beneficiary (Dkt. #26, Exhibit 1-B).[2]

The Decedent and Moore were married in September 2018—over six months after Transamerica issued the Policy to the Decedent (Dkt. #26, Exhibit 1-C). During their marriage, the Decedent did not change his designation of Moore as the primary beneficiary of the Policy, nor did he re-designate her as the primary beneficiary after she became his wife (Dkt. #26 at p. 4).

In January 2021, the Decedent and Moore divorced (Dkt. #27, Exhibit 2). Their divorce decree, issued by the 303rd Judicial District Court in Dallas County, Texas (the "Divorce Decree"), allocated to Decedent "[a]ll policies of life insurance (including cash values)" insuring his life and to Moore "[a]ll polices of insurance (including cash values)" insuring her life (Dkt. #27, Exhibit 2). The Divorce Decree did not specifically identify the Policy as an asset of the marital estate that was subject to division (Dkt. #27, Exhibit 2). After their divorce, the Decedent did not change his designation of Moore as the primary beneficiary of the Policy (Dkt. #26 ¶ 6).

On May 2, 2021, Decedent Ian J. Simpson died unexpectedly (Dkt. #27, Exhibit 3). After

---

[2] In applying for the Policy, the Decedent specifically identified Holly L. Moore as his "Fiancé [sic]" in the relationship section of the application form (Dkt. #26, Exhibit 1-B).

Decedent's death, Moore submitted a claim to Transamerica for the Policy proceeds based on her status as the primary beneficiary of the Policy (Dkt. #26 ¶ 7). Transamerica rejected Moore's claim, finding that her status as the Policy's primary beneficiary was revoked by operation of law under § 9.301 of the Texas Family Code (Dkt. #26, Exhibit 1-G). On the same day that it formally denied Moore's claim, Transamerica sent a letter to Simpson informing him of his beneficiary status and instructing him on how to make a claim to the Policy proceeds (Dkt. #26, Exhibit 1-H). In January 2022, Simpson submitted his own claim to the entirety of the Policy proceeds (Dkt. #1 ¶ 11).

## II.     Procedural History

In the face of these competing claims, Transamerica initiated this interpleader action under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 on April 25, 2022 (Dkt. #1). On May 31, 2022, both Moore and Simpson filed answers to Transamerica's interpleader complaint, which confirmed their competing claims to the Policy's death benefit (Dkt. #6; Dkt. #9).

Transamerica then filed a motion for interpleader relief (Dkt. #13), which the Court granted on January 26, 2023 (Dkt. #32). In its Memorandum Opinion and Order granting Transamerica's motion for interpleader relief, the Court found that the requirements for interpleader have been met and directed Transamerica to deposit the Policy proceeds and any applicable interest, less $11,707 in attorneys' fees and costs, into the registry of the Court (Dkt. #32).

On November 18, 2022, both Moore and Simpson filed their respective motions for summary judgment (Dkt. #26; Dkt. #27). Likewise, both parties filed their respective responses on December 9, 2022 (Dkt. #29; Dkt. #30), and Moore filed a reply to Simpson's response on December 16, 2022 (Dkt. #31).

**LEGAL STANDARDS**

**I.      Interpleader**

Interpleader—whether "statutory interpleader" under 28 U.S.C. § 1335 or "rule interpleader" under Federal Rule of Civil Procedure 22—affords a party (known as a stakeholder) who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1704 (3d ed. 2001); *Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006) ("The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund.").  A district court has broad powers in an interpleader action.  *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).  In the Fifth Circuit, "interpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice," and even the mere threat of multiple and vexatious future litigation provides sufficient basis for interpleader.  *See, e.g.*, *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984).

Interpleader actions generally proceed in two stages.  *Rhoades*, 196 F.3d at 600.  First, the ourt decides whether the requirements for interpleader have been met by determining if the stakeholder has established that there is a single fund at issue and that there are adverse claimants to that fund.  *Id.*  If the requirements for interpleader are satisfied, the court must then proceed to the second stage and "make a determination of the respective rights of the claimants."  *Rhoades*, 196 F.3d at 600.  If there is no issue of material fact regarding entitlement to the fund, the second stage may be adjudicated though summary judgment.  *Id.*  Because the Court has already determined that interpleader is proper here, it begins its analysis at the second stage.

## II. Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court must resolve all reasonable inferences in favor of the party opposing the motion for summary judgment. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."

*Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to deny a motion for summary judgment. *Armour v. Knowles*, 512 F.3d 147, 153 (5th Cir. 2007). The Court must consider all the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

The parties' cross-motions for summary judgment present the Court with three interrelated issues: (1) whether the Policy was the Decedent's separate property, (2) whether § 9.301 of the Texas Family Code invalidates Moore's beneficiary status, and (3) whether the Divorce Decree divests Moore of her beneficiary status (Dkt. #26; Dkt. #27). Moore argues that the Policy was the Decedent's separate property because Transamerica issued the Policy while Decedent was single (Dkt. #26 at pp. 6–7). According to Moore, the Policy is therefore unaffected by either § 9.301 or the Divorce Decree as it is separate property that was not purchased during her marriage to Decedent (Dkt. #26 at pp. 7–8).

Simpson counters that (1) § 9.301 applies even though the Policy was issued before the Decedent married Moore and (2) that, in any event, the Divorce Decree divests Moore of her interest in the Policy (Dkt. #27 at pp. 8–14). The Court finds Simpson's arguments unpersuasive and instead agrees with Moore that the Policy was the Decedent's separate property and is thus unaffected by both § 9.301 of the Family Code and the Divorce Decree. Accordingly, the Court holds that Moore is entitled to summary judgment and that she is the rightful recipient of the Policy

proceeds. The Court addresses each of the parties' issues in turn.

As an initial matter, there is no dispute that Texas law applies here because Texas is the forum state in this interpleader action based on diversity jurisdiction. *United States v. Jesco Const. Corp.*, 528 F.3d 372, 374 (5th Cir. 2008) (noting that the forum state's substantive law governs a diversity-based interpleader action).

I.     **The Policy Was Decedent's Separate Property**

Underpinning Moore's argument is her contention that the Policy was Decedent's separate property (Dkt. #26 at p. 6). Under Texas law, a life insurance policy is property, and, as such, it can be characterized as either community or separate property. TEX. GOV'T CODE ANN. § 312.011(13) ("'Property' includes . . . life insurance policies, and the effects of life insurance policies"). There is a general presumption that property "possessed by either spouse during or on dissolution of marriage" is community property. TEX. FAM. CODE ANN. § 3.003(a). That said, whether property is community or separate in character is ultimately determined by "its character at inception." *See, e.g.*, *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001) (citing *McCurdy v. McCurdy*, 372 S.W.2d 381, 384 (Tex. App.—Waco 1963, writ ref'd)). This so-called "inception-of-title rule" applies to life insurance policies: A policy issued while the insured is single is the insured's separate property; a policy issued during marriage is rebuttably presumed to be community property. *Id.* at 111. Texas courts have embraced the inception-of-title rule because it is conducive to uniformity and a greater degree of certainty. *McCurdy*, 372 S.W.2d at 384.

Under the inception-of-title rule, the Policy was the Decedent's separate property. As Moore points out, the Policy issued seven months before the Decedent and Moore were married (Dkt. #26, Exhibit 1-A). And, in applying for the Policy, the Decedent specifically identified himself as single (Dkt. #26, Exhibit 1-B). These facts establish that the Policy was the Decedent's

7

separate property based on "its character at inception." *Barnett*, 67 S.W.3d at 111.

Rather than challenging these facts, Simpson contends that he is "currently unaware" as to whether the Decedent was single when the Policy issued, and he suggests that the Decedent and Moore could have been "common law married" at the time of issuance (Dkt. #30 at p. 3). Although Texas law recognizes informal marriages (also known as common law marriages), the burden of establishing the existence of an informal marriage is on the proponent. *See, e.g.*, *Joplin v. Borusheski*, 244 S.W.3d 607, 610–11 (Tex. App.—Dallas 2008, no pet.); *Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied). Simpson offers no evidence indicating that the Decedent and Moore were informally married at any point prior to their marriage ceremony in September 2008. And so, the Court concludes that the Policy was the Decedent's separate property.

## II.     Texas Family Code § 9.301 Does Not Apply Here

The parties also contest whether § 9.301 of the Texas Family Code applies here. That statute provides, in relevant part, that:

> (a) If a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition, a provision in the policy in favor of the insured's former spouse is not effective unless:
>
>> (1) the decree designates the insured's former spouse as the beneficiary;
>> (2) the insured redesignates the former spouse as the beneficiary after rendition of the decree; or
>> (3) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse.
>
> (b) If a designation is not effective under Subsection (a), the proceeds of the policy are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the estate of the insured.

TEX. FAM. CODE ANN. § 9.301(a)–(b). Neither party contends that one of the enumerated

8

exceptions applies. Indeed, the divorce decree does not designate Moore as the beneficiary of the Policy, the Decedent did not redesignate Moore as the Policy's beneficiary after the rendition of the divorce decree, and the Decedent and Moore have no children.

So, according to Simpson, the plain language of § 9.301 compels the conclusion that Moore's beneficiary designation is ineffective and that the proceeds of the Policy are payable to him as the contingent beneficiary (Dkt. #27 at p. 10). But Moore argues that § 9.301 applies only to beneficiary designations that occur during marriage, and that the statute does not impact the Policy because it was the separate property of the Decedent (Dkt. #26 at pp. 6–7). Having already decided that the Policy was in fact Decedent's separate property, the Court must now answer the following question: Does § 9.301 apply to a life insurance policy that was the separate property of the decedent and issued prior to the marriage? The Court concludes that it does not.

Neither the Supreme Court of Texas nor any of the Texas intermediate courts of appeals have answered this question. Thus, the Court is left to make an "*Erie* guess" and determine as best it can how the Supreme Court of Texas would rule. *See, e.g.*, *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002). In making an *Erie* guess, the Court's job is to "attempt to predict state law, not to create or modify it." *Id.*

That is not to say that the Court is without guidance in determining whether § 9.301 applies here. Indeed, other district courts have interpreted § 9.301 in the context of similar issues, albeit with differing conclusions. *Compare Primerica Life Ins. Co. v. Simpson*, No. 1:10-CV-00163, 2011 WL 13238321, at *3 (W.D. Tex. Feb. 23, 2011) (concluding that § 9.301 "does not apply when the insurance policy at issue is the former spouse's separate property"), *with Thrivent Fin. for Lutherans v. Smalley*, No. 4:10-CV-02738, 2011 WL 13261511, at *4 (S.D. Tex. July 26, 2011) (concluding that pre-marriage beneficiary designation was revoked by divorce under predecessor

statute to § 9.301).

In *Primerica*, the court addressed the question of whether § 9.301 applies to a beneficiary designation in favor of a former spouse who owned the policy as her separate property prior to the entry of a divorce decree. 2011 WL 13238321, at *14. In that case, the decedent purchased a life insurance policy and subsequently transferred ownership of the policy to his then wife, making her both the owner of the policy and its primary beneficiary. *Id.* The couple divorced after the transfer of ownership, and the wife was not redesignated as a beneficiary of the policy. *Id.* On the decedent's death, which occurred over two decades after the divorce, the wife submitted a claim to the policy proceeds. *Id.* Faced with a competing claim from the decedent's heirs, the life insurance company initiated an interpleader action, and the claimants filed cross-motions for summary judgment, arguing about the applicability of § 9.301 to the beneficiary designation in favor of the wife. *Id.*

As a threshold matter, the court in *Primerica* concluded that the policy was the wife's separate property because the decedent conveyed his interest in the life insurance policy to the wife by gift. *Id.* at *10–11. The court then turned to the question of whether § 9.301 applied, beginning with the plain text of the statute. *Id.* at *12. Per the court, the phrase "insured's spouse" in § 9.301(a) "unambiguously indicates that [§ 9.301] only applies when the designation occurred during marriage," which, in turn, reveals that § 9.301 "is meant to apply to community property life insurance policies acquired during marriage." *Id.* In support of this reading of § 9.301, the court also pointed to the fact that the statute is in Subchapter D of the Texas Family Code, which is titled "Disposition of Undivided Beneficial Interest." *Id.* Moving beyond the statutory text of § 9.301, the court also invoked its duty to "construe statutes in a manner which avoids serious doubt of their constitutionality." *Id.* (quoting *FSLIC v. Glen Ridge I Condominiums, Ltd.*, 750

10

S.W.2d 757, 759 (Tex. 1988)). This "canon of constitutional doubt" dictated that § 9.301 cannot be interpreted to apply to a spouse's separate property because the Texas Constitution "unequivocally mandates that all property, both real and personal, of a spouse owned or claimed by a spouse before marriage, and that acquired afterward by gift. . . shall be the separate property of that spouse," and thus not subject to divestiture in a divorce proceeding. *Id.* (quoting TEX. CONST. art. 16, § 15). Put differently, the court concluded that any interpretation of § 9.301 that divested the wife of her separate property would create significant doubts about § 9.301's constitutional validity. *Id.* For these reasons, the court in *Primerica* held that § 9.301 did not apply and granted the wife's motion for summary judgment. *Id.* at *14.

The logic of *Primerica* applies with equal force here. As was the case in *Primerica*, the policy at issue is separate property, albeit the separate property of the decedent rather than the separate property of the claimant. But, despite this difference, the considerations that drove the court's decision in *Primerica* are indistinguishable from those in this case. Indeed, beginning as it must with the statutory text, the Court also finds that the text of § 9.301 makes clear that the statute applies only to "community property life insurance policies acquired during marriage." *Id.* at *12. Section 9.301 refers explicitly to "the insured's spouse," which indicates that the statute's impact is limited to beneficiary designations that occur during marriage. *See* TEX. FAM. CODE. ANN. § 9.301(a). The Court's reading of § 9.301 is reinforced by the fact that the statute falls in a subchapter titled "Disposition of Undivided Beneficial Interest," because this is further indication that § 9.301 "applies only to undivided community life insurance policies." *Primerica*, 2011 WL 13238321, at *12; TEX. GOV'T CODE ANN. § 311.023(7) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . title (caption), preamble, and emergency provision."). And finally, the same constitutional

concerns raised by the court in *Primerica* are present here.  A construction of § 9.301(a) that extends the statute to a spouse's separate property held before marriage would necessarily create a risk of divesting a spouse of their separate property.  It is axiomatic under Texas law that "a court cannot divest an owner of separate property."  *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (citing *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140–41 (Tex. 1977)).  The Court therefore has a duty to avoid such a construction, and, as a result, it must conclude that § 9.301 is inapplicable when the life insurance policy is a former spouse's separate property.  *Primerica*, 2011 WL 13238321, at *12.

Simpson urges the Court to construe § 9.301 broadly, arguing that the statute applies even if the policy was issued before marriage so long as it was issued prior to the rendition of a divorce decree (Dkt. #27 at p. 11).  Essentially, Simpson argues that it is "of no moment" that the Policy was issued before the Decedent and Moore were married (Dkt. #27 at p. 12).  In support of this argument, Simpson cites *Thrivent*, which he describes as "directly on point" (Dkt. #27 at p. 11). The Court finds Simpson's invocation of *Thrivent* unavailing.  To begin it is worth noting that *Thrivent* involved Texas Family Code § 3.362, a predecessor statute to § 9.301. *Thrivent*, 2011, 1326151, at *4.  That said, § 3.362(b) is substantively identical to § 9.301(a). *Id.* at *4 n.3. And, in applying § 3.362(b), the court in *Thrivent* noted that the "insured's *spouse*" language—which is present in both the current and former versions of the statute—"suggests that a beneficiary must be married to the policy owner at the time of the designation in order for § 3.362 to apply to the Policy." *Id.* (emphasis in original).  Despite recognizing the limited reading of § 3.362 compelled by the statutory text, the court in *Thrivent* went on to conclude that the "common law rule regarding termination of beneficial interests in favor of ex-spouses" meant that the statute extended to a policy issued prior to marriage. *Id.* at *3.  But the court in *Thrivent* made no attempt to square its

12

broad construction of § 3.362 with the Texas Constitution's unequivocal prohibition against courts divesting a spouse of their separate property. Likewise, Simpson makes no attempt to address the constitutional concerns created by his preferred reading of § 9.301. *Cf. Primerica*, 2011 WL 13238321, at *12; *Graves v. Tomlinson*, 329 S.W.3d 128, 156 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting that "divestiture of separate property by the trial court is contrary to the Texas Constitution").

In the end, the Court is left to decide a novel issue of Texas law without the benefit of guidance from the Supreme Court of Texas. In this position, it is not the Court's role to create new law or to modify it. *Herrmann*, 302 F.3d at 558. Thus, the Court is obligated to interpret § 9.301 in a manner that both hews closely to the statutory text and aligns with the protections of the Texas Constitution. It is for this reason that the Court concludes that § 9.301 does not apply here where the Policy was the decedent's separate property.

### III. The Divorce Decree Does Not Impact the Policy's Beneficiary Designation

Finally, Simpson contends that, irrespective of § 9.301, the Divorce Decree divests Moore of her beneficiary status under the Policy (Dkt. #27 at p. 13). Simpson points out that the Divorce Decree explicitly states that Moore is "divested of all right, title, interest, and claim" in and to "[a]ll policies of life insurance (including cash values) insuring [Decedent's] life" (Dkt. #27, Exhibit 2).

But, as discussed above, the Policy was Decedent's separate property when the Divorce Decree was rendered. *See* Part I, *supra*. As such, the Policy was not divided or modified by the Divorce Decree. *Cameron v. Cameron*, 641 S.W.2d 210, 220 (Tex. 1982) (holding that a party lacks authority to divest a part of separate property in a divorce decree).

In sum, the Court concludes that the Policy was Decedent's separate property. As such, it

was not modified by § 9.301 or the Divorce Decree. This means that Decedent's designation of Moore as the Policy's primary beneficiary is still effective, and Moore is entitled to recover the proceeds of the Policy.

## CONCLUSION

It is therefore **ORDERED** that Defendant Holly L. Moore's Motion for Partial Summary Judgment that Holly Moore is the Primary Beneficiary of the Subject Transamerica Life Insurance Policy (Dkt. #26) is hereby **GRANTED**.

It is further **ORDERED** that Defendant Jeffrey H. Simpson's Motion for Summary Judgment (Dkt. #27) is hereby **DENIED**.

All relief not previously granted is hereby denied.

The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

**IT IS SO ORDERED**.

**SIGNED this 31st day of May, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE